Wade JOHNSON et al., Appellants,

v.

REDEVELOPMENT AGENCY OF the CITY OF OAKLAND, CALIFORNIA, a public body, Corporate and Politic, et al., Appellees.

No. 18311.

United States Court of Appeals
Ninth Circuit.

May 17, 1963.

Rehearing Denied June 20, 1963.

Benjamin Travis, Oakland, Cal., for appellants.

Knox, Goforth & Ricksen, and Calvin T. Goforth, Oakland, Cal., and McDonough, Holland, Schwartz, Allen & Wahrhaftig, Martin McDonough and Daniel F. Gallery, Sacramento, Cal., for appellees Redevelopment Agency of City of Oakland.

Hilton J. Melby, City Atty., and Frederick M. Cunningham, Deputy City Atty., Oakland, Cal., for appellees City of Oakland and John C. Houlihan, Mayor of City of Oakland.

Before ORR, BARNES and JERTBERG, Circuit Judges.

ORR, Circuit Judge.

In order to promote slum clearance and urban renewal, the Congress of the United States in 1949 enacted the Housing Act, 42 U.S.C. § 1441 et seq. In furtherance of the same aim, California has provided by law for the creation of a redevelopment agency, functioning under the California Redevelopment Law, Sections 33000–33985 of the California Health & Safety Code. The City Council of the City of Oakland, California decided to redevelop certain areas of said city, among which is the so-called Acorn Project. In order to carry out this objective, the City Council activated the Redevelopment Agency of the City of Oakland pursuant to Section 33201 of the Health & Safety Code of California. Said Agency submitted a plan of redevelopment to said City Council. A public hearing was held on November 30, 1961, and thereafter the plan submitted was approved by said City Council.

Subsequent to such approval the Redevelopment Agency made application to the United States Housing and Home Finance Agency for financial assistance in carrying out the project. The requested assistance was authorized and a Loan and Capital Grant Contract was entered into by the Housing and Home Finance Agency on the part of the United States and the Redevelopment Agency pursuant to authority granted under Title I of the Housing Act of 1949. The United States agreed to loan the Agency $10,373,941 to carry out the project under the plan submitted. The contract provides that at the conclusion of the project the United States will make a capital grant to the receivers of the loan of two-thirds of the net project cost.

The Agency, after receiving an advance of $3,200,000 and expending $2,200,000 for the purchase of about 170 properties out of a total of 550 to be purchased within the Acorn Project, was, along with other named defendants, sued by thirteen residents of the Acorn Project area, on behalf of themselves and others similarly situated, seeking to enjoin the Agency from carrying out the Acorn Re-

development Project and to enjoin further spending of money obtained from the United States Government to carry out said redevelopment plan, on the ground that the conduct being pursued by the Agency violates the Housing Act of 1949, 42 U.S.C. § 1455(c).[1] It is further alleged that there is a violation of the Fifth and Fourteenth Amendments of the Constitution of the United States.

Defendants answered in the trial court and thereafter moved for summary judgment. Affidavits were filed by each side. The trial court, upon consideration of the pleadings and affidavits, granted the motion for summary judgment. The issues on this appeal have narrowed, insofar as the contentions of appellants are concerned, to whether the Redevelopment Agency has formulated and is carrying out a feasible plan of relocation as required by Section 1455(c). This question need not be reached because we have decided that appellants have no standing to sue.

■ Appellants contend that they derive the right to maintain this suit from Section 1455(c) of the Housing Act of 1949, hereinbefore set out, and the incorporation of this provision in the contract between the United States and the Redevelopment Agency.

We find no indication that Congress intended this section of the Housing Act to give a right of action to those not a party to the contract between the Redevelopment Agency and the United States. This provision is but one of many obligations imposed upon the Redevelopment Agency by the United States as a condition to the granting of redevelopment funds and loans. 42 U.S.C. § 1455(c).[2] Because of the complexity of urban renewal and the expertise of the Administrator of the Federal Housing and Home Finance Agency, Congress delegated to the Administrator the duty of enforcing the conditions of the Loan and Capital Grant Contract required by the Housing Act. See Hunter v. City of New York, Sup., 121 N.Y.S.2d 841 (1953).

■ But, argues appellant, since the contract contained substantially the same requirements as Section 1455(c), they are third party beneficiaries under California law. This is not true because the contract, involving an agency of the United States and controlled by federal statutes, is governed by federal law. The federal courts have consistently held that those not parties to the contract have no standing to enforce conditions imposed on redevelopment agencies by the United States, although those suing would benefit from such enforcement. Gart v. Cole, 263 F.2d 244 (2d Cir., 1959); Allied-City Wide, Inc. v. Cole, 97 U.S.App.D.C. 277, 230 F.2d 827 (1956); cf. Pittsburgh Hotels Association v. Urban Redevelopment Authority of Pittsburgh, 309 F.2d 186 (3rd Cir., 1962).

■ Appellants complain that if they cannot sue, they are left with no redress against the decisions of the Redevelopment Agency. Although Congress did not accord them the right to challenge the redevelopment plan by resort to a federal court, three distinct methods are provided for challenging the effectiveness of a plan formulated by the Redevelopment Agency.

First, the redevelopment plan must be approved by the Federal Housing and Home Finance Administrator before the federal government will provide funds or loans to assist in carrying out the project.

1. "Contracts for loans or capital grants shall be made only with a duly authorized local public agency and shall require that—

"(c) There be a feasible method for the temporary relocation of families displaced from the urban renewal area, and that there are or are being provided, in the urban renewal area or in other areas not generally less desirable in regard to public utilities and public and commercial facilities and at rents or prices within the financial means of the families displaced from the urban renewal area, decent, safe, and sanitary dwellings equal in number to the number of and available to such displaced families and reasonably accessible to their places of employment."

2. See 25 U.Chi.L.Rev. 301, 337–349 (1958).

42 U.S.C. § 1451(c). This was done in the instant case. The Administrator has approved the submitted redevelopment plan including the proposed method of relocation. In the event the local Redevelopment Agency should fail to comply with the provisions of the contract or any relevant federal statutes, the Administrator is authorized to take whatever action he deems necessary to effectuate the policies of the Housing Act. 42 U.S.C. § 1456(c). It would thus seem that parties who are in the process of being relocated may present their grievances, if any, to the Administrator, who is able to protect the interests of private individuals.

Both federal [3] and California [4] law require that there must be a public hearing before the redevelopment plan can be implemented. Such hearings were had and appellants had notice thereof as required by law. No appearance was made by appellants or those in behalf of whom they attempt to sue to present their grievances. Absent protests, the Redevelopment Agency had a right to assume that the plan was satisfactory and proceeded to put it in operation. The Agency has expended thus far over $2,000,000 in carrying out the project.

There is a third check accorded interested parties. Section 33746 of the Health and Safety Code of California provides that any interested party may attack the proposed redevelopment plan in the state courts within 60 days after the plan has been adopted.[5] Appellants also failed to pursue this remedy. They claim they were misled in failing to invoke the jurisdiction of the California courts. Conceding that to be true, resort to the federal court cannot be predicated thereon.

Concluding that the appellants lack standing to sue in the instant case, we hold that the District Court was correct in granting summary judgment for appellees.

Affirmed.

---

3. 42 U.S.C. § 1455(d).

4. California Health & Safety Code, § 33530. Although potentially more effective than judicial proceedings in protecting private interests, the present methods of holding public hearings are subject to much criticism. See 72 Harv. L.Rev. 504, 513–515 (1959); 45 Cal.L. Rev. 134, 143–149 (1957).

5. Although this 60 day period expired prior to the signing of the contract between the United States and the Redevelopment Agency, the redevelopment plan when presented to the City Council of Oakland for its approval contained a plan for the relocation of those displaced by the project as required by Section 33738 of the Health & Safety Code of California.