341 F.2d 989
 George MERGE and Weldon R. Hooper, Trading and Doing
Business as Asphalt Products Company, a
Partnership, Plaintiffs-Appellants,
v.
Harry I. SHAROTT, Area Coordinator, Urban Renewal
Administration of the Housing and Home Finance Agency of the
United States of America, Robert C. Weaver, Administrator,
Housing and Home Finance Agency of the United States of
America, and Urban Redevelopment Authority of Pittsburgh,
Defendants-Appellees.
 No. 14770.
 United States Court of Appeals Third Circuit.
 Argued May 8, 1964, Reargued Nov. 20, 1964.
Decided Feb. 16, 1965, As Amended April 2, 1965.
 
 James E. McLaughlin, McArdle, Harrington, Feeney & McLaughlin, Pittsburgh, Pa. (John J. Hickton, Pittsburgh, Pa., on the brief), for appellants.
 Stanley W. Breenfield, Asst. U.S. Atty., Pittsburgh, Pa. (Gustave Diamond, U.S. Atty., Pittsburgh, Pa., on the brief), for appellees, Housing & Home Finance Agency and Urban Renewal Admn.
 Theodore L. Hazlett, Jr., Pittsburgh, Pa., on the brief, for appellee Urban Redevelopment Authority of Pittsburgh.
 Before BIGGS, Chief Judge, and McLAUGHLIN, KALODNER, STALEY, HASTIE, GANEY, SMITH and FREEDMAN, Circuit Judges.
 McLAUGHLIN, Circuit Judge.
 
 
 1
 This is an appeal from an order of the District Court of the Western District of Pennsylvania, granting defendants' motion to dismiss and entering summary judgments in their favor.
 
 
 2
 The plaintiffs-appellants, George Merge and Weldon R. Hooper, are citizens of Pennsylvania, and partners in a business known as Asphalt Products Company. This business is located in the City of Pittsburgh and operates as a unit from two leased buildings on opposite sides of Metropolitan Street in that city.
 
 
 3
 Defendant Urban Redevelopment Authority of Pittsburgh (URA) is a body corporate and politic, organized under the Urban Redevelopment Law of Pennsylvania (Pa.Stat.Ann. tit. 35, Section 1704 (1964)) and authorized to contract for federal assistance in aid of its programs. Pa.Stat.Ann. tit. 35, Section 1718 (1964).
 
 
 4
 Defendant Robert C. Weaver, Administrator of the Housing and Home Finance Agency (HHFA), is an officer of the United States, authorized to enter into contracts for federal assistance, pursuant to the provisions of the Federal Slum Clearance Act (Act of July 15, 1949, c. 338, 63 Stat. 413, Title I, 42 U.S.C. 1450-1462 (1958) as amended. Defendant Harry I. Sharott is an Area Coordinator of the HHFA.
 
 
 5
 Duly acting within their powers, and pursuant to the aforementioned governing statutes, on November 3, 1960 the URA entered into a loan and grant contract with the HHFA, Robert C. Weaver, Administrator, for assistance to carry out a specific urban renewal project known as the Chateau Street West Project. Under this contract it was provided that relocation payments be paid to businesses and families displaced by the urban renewal project.[1]
 
 
 6
 The boundaries of this redevelopment project fell between the two buildings leased by plaintiffs, so that on October 6, 1961, the URA at its meeting condemned only the building within the project area. However, because plaintiffs' business was integrated and necessarily operated as a unit, plaintiffs had to move their whole business, including that portion thereof located in the building outside the project area.
 
 
 7
 On August 27, 1962, the URA petitioned the Court of Common Pleas of Allegheny County for the appointment of viewers to determine the damages for the taking of that building. Duly appointed, the Board of Viewers held hearings at which testimony was introduced and a claim made for relocation and moving expenses involving the building outside the project area. Relief as to this latter claim was denied.
 
 
 8
 A complaint seeking a declaratory judgment had been filed in the United States Court for the Western District of Pennsylvania. Therein, the plaintiffs-appellants 'demanded judgment against the defendants declaring that the defendants, under the authority of the aforesaid statute (42 U.S.C 1456 (1958)) of the United States of America, are obligated to pay to the plaintiffs, the total certified, actual moving expenses of the plaintiffs' business concern, that is to say, the total moving costs of Building No. 1 and No. 2, less any amount heretofore paid by the defendants.'
 
 
 9
 The plaintiffs had received relocation payments in the amount of $42,339.37 which represented the expenses incurred in moving that portion of the business which was located in the project area and although no amount is specified in the complaint as improperly withheld, plaintiffs actually seek a recovery of $30,500, the balance of the reasonable and necessary cost of moving their said business.
 
 
 10
 The District Court proceeding had been stayed, pending the outcome of the Board of Viewers hearing. But when the Court of Common Pleas made the Board's award absolute, from which no appeal was taken, defendants-appellees moved to dismiss the District Court complaint because of the plaintiffs' lack of standing to sue. The District Court judge said that he thought '* * * whoever is in charge should have paid, should have paid (the total expenses of relocation of the business as an administrative matter. It seems to me just and fair that they should have paid it * * *.' However, he denied relief, because as he construed the statute, no legal right to the relocation payments ran to the plaintiffs and thus they suffered no legal wrong in their denial entitling them to judicial review under the Administrative Procedure Act.
 
 
 11
 As in the court below, the plaintiffs here have sought recovery of the balance of the relocation payments allegedly withheld on the theory that they are 'persons suffering legal wrong because of any agency action, or adversely affected or aggrieved by such action, * * *' and entitled to review under the Administrative Procedure Act. 5 U.S.C. 1009 (1958).
 
 
 12
 The Urban Renewal Assistance Contracts are authorized by the Housing Act of 1949, also known as the Slum Clearance-Urban Renewal Act. Act of July 15, 1949, c. 338, Title I, 63 Stat. 413, 42 U.S.C. 1450 et seq. (1958) as amended. Therein, Congress set forth its national Housing policy, national housing goals and inter alia, a plan of federal assistance to relieve urban blight and bring about 'a suitable living environment for every American family.' 42 U.S.C. 1441 (1958). When a community wishes to qualify for federal assistance under the Act, to redevelop slum and blighted areas, it first formulates a long-range plan and 'workable program' for the elimination of slums and urban blight. 42 U.S.C. 1451(c) (1958). See Sen.R.No.1472, 83d Cong.2d Sess., U.S.Code Cong. and Ad.News, P. 2758 (1954). The Administrator examines the 'workable program' of the applicant-community, to determine whether it conforms with the board requirements of 42 U.S.C. 1451(c) (1958). If he approves it, he may make federal assistance in the form of capital grants and loans available to the locality for specific urban renewal projects. 42 U.S.C. 1452, 1453 (1958). Subject to certain statutory requirements (See 42 U.S.C. 1454, 1455 (1958)) a Title I contract is then entered into between the Administrator of the HHFA and the local public agency, fixing the kind and amount of assistance (e.g., amount of local grant-in-aid and of federal assistance and whether relocation payments are to be made); and the urban renewal project actually commences. The local public agency takes title to the land, either by direct negotiation or by eminent domain proceedings after a public hearing (42 U.S.C. 1455(d) (1958)), and after relocation of the occupants and site preparation, it usually sells the land to private developers and the hoped for result is a redeveloped slum-eliminated urban community.[2]
 
 
 13
 As above indicated, the Title I contract may provide for the payment of relocation expenses to businesses and families displaced by an urban renewal project. Unlike Section 1453 which provides for the 'sharing of costs' for land tract assembly and slum clearance, limited by a statutory ratio, Section 1456(f)[3] provides that relocation payments be totally funded by the Federal Government. However, to the extent amounts payable for relocation expenses under Section 1456(f) are compensable under state (condemnation) law, they may not be paid under a Title I contract. Administratively these payments are distributed by the local agency.[4]
 
 
 14
 It is the position of the defendants that Section 1456(f) and the Slum Clearance Act is a subsidy statute, under which no legal rights accrue to the intended beneficiaries thereof; that relocation payments authorized under the Act are not a matter of right but rather of Congressional grace. The contention of the plaintiffs is that pursuant to a declared national housing policy, the Housing and Home Finance Agency, through its Administrator had undertaken in this case to subsidize the Chateau Street Project; and entered into a Title I contract under which both the local public agency (URA) and the Administrator were bound and under which relocation payments for displaced businesses and families were provided. It is conceded by plaintiffs that initially the Administrator had the discretion whether or not to provide for the payment of relocation expenses (42 U.S.C. 1456 (1958)), but it is pointed out that in the Title I contract at bar he so provided and thereby solemnly pledged the faith of the United States to pay them. 42 U.S.C. 1453(b) (1958).[5] See Perry v. United States, 294 U.S. 330, 55 S.Ct. 432, 79 L.Ed. 912 (1935); 41 Ops.Atty. Gen. 138 (1953). This asserted binding obligation upon the United States was incurred pursuant to Congressional authority and design, as Congress from the first had evidenced a real and recurring concern for persons displaced as a result of the program,[6] ultimately providing for compensation to mitigate their hardship. See S.Rep.No.368, 85th Cong., 1st Sess., U.S.Code Cong. & Ad.News, p. 1338 (1957); see also H.Rep.No.2363, 84th Cong.2d Sess., U.S.Code Cong. & Ad.News, p. 4536 (1956); so that the situation is not one of a Congressional grant for past meritorious and voluntary action by citizens grounded upon equitable or moral considerations. Cf. Emerson's Heirs v. Hall, 13 Pet. 409, 38 U.S. 408, 10 L.Ed. 223 (1839); Blagge v. Balch, 162 U.S. 439, 16 S.Ct. 853, 40 L.Ed. 1039 (1896); United States v. Realty Company, 163 U.S. 427, 16 S.Ct. 1120, 41 L.Ed. 215 (1896); Work v. United States ex rel. Rives, 267 U.S. 175, 46 S.Ct. 252, 69 L.Ed. 561 (1925). Plaintiffs consider it a grant pursuant to a public program requiring compliance or forbearance by those affected by or within the purview of the law setting out the program. Their conclusion is that we have before us a subsidy designed to be compensatory in character. Aycock-Lindsey Corp. v. United States, 171 F.2d 518 (5 Cir. 1958). Cf. Eisenberg, Judicial Standing in Subsidy Cases, 41 A.B.A.J. 718 (1955). As was held in a case arising under the Emergency Price Control Act: 'The meat subsidy payments were not mere gratuities or bounties but were articulated with the price control program and operated as compensatory in nature so as to validate a lower level of maximum meat prices than otherwise would have been permissible under the Emergency Price Control Act. Meat slaughterers who qualified under the subsidy regulations thus were entitled to the subsidy as a matter of right and not of grace.' Riverview Packing Co. v. Reconstruction Finance Corporation, 207 F.2d 361, 367 (3 Cir. 1953); see Illinois Packing Co. v. Snyder, 151 F.2d 337, 339 (Em.App.1945); see also Miller v. United States, 124 F.Supp. 203 (W.D.Mo.1954); Wilkinson v. United States, 242 F.2d 735 (2 Cir. 1957) (under Servicemen's Indemnity Act).
 
 
 15
 Plaintiffs therefore urge that the provision for relocation payments in this Title I contract, under the instant facts, is a binding obligation upon the United States and its authorized agent, the Administrator of the HHFA, and that under such contract a legal right has matured in favor of its intended beneficiaries. See United States v. Huff, 165 F.2d 720, 723, 1 A.L.R.2d 854 (5 Cir. 1948). Cf. Stark v. Wickard, 321 U.S. 288, 304-306, 64 S.Ct. 559, 88 L.Ed. 733 (1944).
 
 
 16
 The undisputed facts make out a cause of action for both the justiciability and the merits of plaintiffs' claim. The contract calls for relocation payments. The business with which we are concerned, as stipulated, 'was fully integrated having a unity of use between both buildings.' That business was admittedly displaced by the absorption of the integrated half within the project. It was determined by both the local and federal agencies that relocation payment for the business be made. The term 'relocation payments', under the statute, Section 1456(f)(2) 'means payments by a local public agency to * * * business concerns * * * for their reasonable and necessary moving expenses * * *.' Acting specifically under the statute and the contract the Federal Agency through the Local Authority purportedly made such payment to the plaintiffs but it only included the expense of moving the half of the business which had been located on the project. This is frankly and properly conceded in the Stipulation, paragraph 2 of which reads: 'The refusal to pay the full amount of relocation payments was a determination of the Housing and Home Finance Agency.' Plaintiffs are suing solely for the unpaid balance of 'the full amount' of their 'reasonable and necessary moving expenses' for their displaced business. Appellees assert that the fixing of the amount of the sum paid plaintiffs for their moving expense was completely within the discretion of the Housing and Home Finance Agency. We are entirely satisfied that the discretion must be reasonably exercised. The request of plaintiffs for the full amount of their reasonable and necessary moving expenses cannot be denied '* * * arbitrarily or capriciously or for reasons that evince a complete disregard of the law and the facts.' Blazina v. E. P. Bouchard, Dist. Director, etc., 286 F.2d 507 (3 Cir. 1961); cert. den.366 U.S. 950, 81 S.Ct. 1904, 6 L.Ed.2d 1242 (1961). To same effect, Dunat v. Holland, Dist. Director, etc., 297 F.2d 744 (3 Cir. 1961).
 
 
 17
 As we read the trial judge's oral decision (p. 39a appendix), from the scant material before him on the argument for summary judgment, he may have obtained the impression that two independent transactions and payments were the base of the unusual litigation. This could also have been the original thought of the agencies which resulted in the initial refusal to pay the balance. Plaintiffs did conduct their business from two separate parcels of real estate, one within and the other outside the geographical boundary of the project. As we have seen, it is agreed that one fully integrated business was conducted from the two sites. It was the elimination of the property within the project that destroyed the functioning of the business. It was payment of the cost of moving that business to a new area to which both authorities agreed. That cost was ostensibly paid plaintiffs. The payment, as now conceded, did not cover the full cost of the transfer. Not waiving any of their rights, plaintiffs strongly assert that, whatever their status may have been prior to the Agency conclusion to pay the expense of relocating their business and then paying for same but not in the full amount, the relocation is an accomplished fact strictly within the statute. And they say that the only thing remaining to be done is for the Agency to complete its agreed payment for their reasonable and necessary moving expenses.
 
 
 18
 We are satisfied that at the very least there is a substantial question in this suit whether the Agency refusal to pay plaintiffs the balance of their moving costs is not arbitrary, capricious and actually contrary to the language of the statute and the HHFA regulations.
 
 
 19
 With reference to administrative and state remedies, it is clear that plaintiffs have exhausted such remedies as were available to them in the circumstances in which they found themselves. As of February 24, 1963, the date on which the complaint in this cause was filed, a claim for relocation payments had been made and paid to the extent of expenses incurred in moving that portion of the business located in the project area. Plaintiffs alleged that with reference to the 'machinery, equipment, etc.' in the other building, defendants 'have repeatedly refused to pay' for their relocation.
 
 
 20
 Plaintiffs raised that latter claim again in the Board of Viewers hearing and the Board rejected it, which decision the Court of Common Pleas affirmed.
 
 
 21
 Plaintiffs did not appeal, nor was it indicated that they do so, since they had no remedy in the state courts under state law. Pennsylvania does not authorize the payment of relocation expenses as part of its eminent domain proceedings. See Pa.Stat.Ann. tit. 35, Section 1712; tit. 53, Section 1141 et seq. (1964); Delaware County Redevelopment Authority v. Carminatti, 18 Pa.Dist. & Co. R.2d 704 (1960).
 
 
 22
 As relocation expenses were non-compensable under state law (cf. 42 U.S.C. 1456 (1958)), any remedy remaining to plaintiffs would arise under the Federal Act authorizing them and against the federal agency which would be the source of the funds. While there is nothing in the record to indicate plaintiffs filed a written claim on Form H-6140, as provided by 24 C.F.R. 3.109 (1961), there is no dispute about the fact that a claim was made and rejected. Nor is any remedy provided under the Act or regulations where a claim is either partially or wholly denied. Section 5 of the Administrative Procedure Act does not apply since there is no provision in the Slum Clearance Act for agency hearing.
 
 
 23
 At this stage of the litigation, having in mind the agreed facts, we see no real difficulty in plaintiffs continuing as they are under the Administrative Procedure Act. That course has not been challenged by the defense. The latters' attack is not centered on the method of procedure, but on the proposition that plaintiffs simply do not have any rights in the matter at all. In any event, plaintiffs have also a cognizable direct claim against the Federal Agency for the balance of their moving expense. This, though it would seek recovery for an amount in excess of $10,000, would lie in the District Court. See George H. Evans & Co. v. United States, 169 F.2d 500, 502 (3 Cir. 1948); Ferguson v. Union National Bank of Clarksburg, W. Va.,126 F.2d 753 (4 Cir. 1942); Seven Oaks v. F.H.A., 171 F.2d 947 (4 Cir. 1948).
 
 
 24
 We do not consider that there is any diversity problem in this appeal. The instant claim was created by Federal law and matured through the Title I contract. Jurisdiction was conferred on the District Court by virtue of 28 U.S.C. 1331, as amended July 25, 1958, 72 Stat. 415. See Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). Cf. Johnson v. Redevelopment Agency of City of Oakland, California, 317 F.2d 872 (9 Cir. 1963).
 
 
 25
 Finally, we have no view at this time with respect to the merits of plaintiffs' cause of action.
 
 
 26
 The judgment of the District Court is vacated and the case remanded thereto for a full trial on the merits.
 
 
 27
 BIGGS, Chief Judge (concurring).
 
 
 28
 In my view the record in this case is insufficient to warrant the granting of the motions to dismiss and for summary judgments despite the amplification created by the stipulation referred to in note 1 of the plurality opinion, assuming that the information contained therein is properly before this court. Moreover, I am unable to perceive the validity of the defense of res judicata referred to in the dissenting opinion. I cannot be certain in the light of the present record as to what are the rights of the parties. For these reasons I concur in the result reached by the plurality opinion.
 
 
 29
 FREEDMAN, J., joins in this concurrence.
 
 
 30
 SMITH, Circuit Judge (dissenting).
 
 
 31
 This is a civil action in which the plaintiffs seek a judgment declaratory of their alleged right to relocation payments under the Slum Clearance and Urban Renewal Act as amended, 42 U.S.C. 1441 and 1462, 1958 Ed. However, we are not now concerned with the substantive right of the plaintiffs; we are concerned only with their right to maintain this action and the jurisdiction of the court below to entertain it. We are of the opinion that the action may be maintained, if at all, only against the Urban Redevelopment Authority of Pittsburgh, a municipal agency, hereinafter identified as the Authority. The plaintiffs have no right of action against the Administrator of the Housing and Home Finance Agency of the United States. The court below was without jurisdiction to entertain the action against the Authority.
 
 
 32
 The pertinent provisions of the said Act authorized the Administrator, upon his approval of an appropriate project, to make a grant of federal funds to a local political division, or an agency thereof, in aid of slum clearance and urban renewal. 42 U.S.C. 1452 and 1453. The Administrator, in the exercise of his discretion, was empowered to include in the grant an amount sufficient to meet 'relocation payments,' 42 U.S.C. 1456(f)(1), as defined in subdivision (2). Such payments were therein defined as 'payments by a LOCAL PUBLIC AGENCY * * * to individuals, families, and business concerns for their reasonable and necessary moving expenses * * * resulting from their displacement by an urban renewal project * * *.' The statute required that the grant, including any provision for the payment of relocation costs, be made the subject of a written contract between the Administrator and the local agency.
 
 
 33
 Where the contract of grant provided for the making of relocation costs to persons or business concerns displaced as the result of a renewal project, the local agency was vested with full authority to establish and administer a program of payments. 24 C.F.R. 3.100-3.110. As a necessary incident to this administrative authority the local agency was empowered and required to determine the conditions of eligibility under which such payments were to be made, subject only to the restrictive limitations imposed by the Act and the regulations promulgated thereunder. Ibid. All relocation payments 'made in accordance with (the) regulations and pursuant to a capital grant contract (were) reimbursable in full to the' local agency 'as a * * * grant.' 24 C.F.R. 3.106(b). It seems reasonably clear that under a grant contract, of which the regulations are an integral part, the Administrator would be liable to the local agency to the full extent of his contractual commitment.
 
 
 34
 It is conceded by the Administrator and the Authority that the grant contract in the instant case contains a provision for the making of relocation payments as authorized by 42 U.S.C. 1456(f)(1), (2) and the regulations. See footnote 4 in majority opinion. The failure or refusal of the Administrator to reimburse the Authority for relocation payments made by it in accordance with the regulations and pursuant to their contract would undoubtedly give rise to a right of action in favor of the Authority. However, it does not follow that a displaced business concern would have a right of action against the Administrator based upon the failure or refusal of the Authority to make relocation payments. Such a business concern may have a right of action against the Authority but absent diversity of citizenship or a federal question, and in this case we have neither, the action could not be maintained in the federal district court. We find nothing in the Act which gives to a displaced business concern a right of action against the Administrator.
 
 
 35
 It appears from the undisputed facts that the Authority initiated a condemnation proceeding in the Court of Common Pleas in Allegheny County. Therein the present plaintiffs, joined as respondents, asserted two claims: one which included a claim for the expenses incurred in moving that portion of the business which had been located in a building within the renewal area and another which included a claim for the expenses incurred in moving that portion of the business located in a building outside the renewal area. The former was allowed and the latter was disallowed, and judgment was entered accordingly. The majority concludes that under these facts the plaintiffs 'had no remedy in the state courts under state law.' This conclusion seems to us erroneous.
 
 
 36
 We agree with the majority that under the law of Pennsylvania, as under the law of many states, removal costs are not recoverable as an element of damage in an eminent domain proceeding. This is true because in such a proceeding the measure of damages is ordinarily the market value of the property taken together with reasonable compensation for the consequential damage to that portion of the property remaining in the possession of the owner. However, it does not follow that removal costs may not be recovered in an independent action if their payment is authorized by statute.
 
 
 37
 The Authority was organized as a municipal agency under the 'Urban Redevelopment Law' of Pennsylvania, 35 P.S. 1701-1747. Section 1709 empowers the Authority, among other things, to acquire 'real or personal property or any interest therein' by purchase, eminent domain or otherwise. Subdivision (l) of the said section empowers the Authority to 'reimburse for their reasonable expenses of removal, the occupants of a development area who have been displaced as a result of the redevelopment.' This provision, construed as consistent with the federal Act, would appear to authorize the payment of relocation costs by the Authority where, as here, the grant contract contained a provision for their payment. Any payments made in accordance with the federal regulations, supra, and pursuant to the grant contract would be reimbursable to the Authority as hereinabove noted.
 
 
 38
 Section 1716 of the Urban Redevelopment Law, supra, is relevant and reads in pertinent part as follows:
 
 
 39
 'An obligee of an Authority shall have the right, in addition to all other rights which may be conferred on such obligee, subject only to any contractual restrictions binding upon such obligee:
 
 
 40
 '(a) By mandamus, suit, action or proceeding at law or in equity to compel the Authority and the members, officers, agents or employees thereof to perform each and every term, provision and covenant contained in any contract of the Authority with or for the benefit of such obligee, and to require the carrying out of any or all such covenants and agreements of the Authority, and the fulfillment of all duties imposed upon the Authority by this act;'
 
 
 41
 The remedies available under the quoted section are clearly in addition to any other remedies 'an obligee of the Authority' may have under the eminent domain laws. If, as it is here contended, relocation payments were arbitrarily and capriciously denied, in violation of the applicable regulations and the contract grant, the plaintiff's right of action is against the Authority and not against the Administrator.
 
 
 42
 However, we have here a situation in which the statutory remedy is no longer available to the plaintiffs. Although not required to do so, they elected to assert their disputed claim for relocation costs in the eminent domain proceeding brought by the Authority in a State court of competent jurisdiction. The issues raised by this claim were resolved against them and judgment was entered accordingly. This judgment is not subject to collateral attack by the plaintiffs in a declaratory judgment action.
 
 
 43
 HASTIE, J., joins in this dissenting opinion.
 
 
 
 [1]
 The proceeding below was simply an oral hearing on defendants' motions which were granted. It had not reached the stage where the contract was in evidence, though it was and is uncontradicted that a relocation payment provision was included in the Title I contract. In accordance with the request of this court, the parties have filed with the clerk of this court a copy of the contract and a stipulation wherein the parties stipulate and agree:
 '1. The contract between the Urban Redevelopment Authority of the City of Pittsburgh and the Housing and Home Finance Agency provides for relocation payments.
 '2. The refusal to pay the full amount of relocation payments was a determination of the Housing and Home Finance Agency.
 '3. For purposes of this appeal before the Third Circuit the appellants' business operation was fully integrated having a unity of use between both buildings.
 '4. A copy of the contract between the Urban Redevelopment Authority of the City of Pittsburgh and the Housing and Home Finance Agency is enclosed for the review and use by the Court.'
 
 
 [2]
 See Johnstone, The Federal Urban Renewal Program, 25 U.Chi.L.Rev. 301 (1958); Note, 72 Harv.L.Rev. 504 (1959); Urban Renewal Symposium, 21 Fed.Bar.J. No. 3 (1961)
 
 
 [3]
 Section 1456(f) now provides:
 '(1) Notwithstanding any other provision of this subchapter, an urban renewal project respecting which a contract for a capital grant is executed under this subchapter may include the making of relocation payments (as defined in paragraph (2)); and such contract shall provide that the capital grant otherwise payable under this subchapter shall be increased by an amount equal to such relocation payments and that no part of the amount of such relocation payments shall be required to be contributed as part of the local grant-in-aid.
 '(2) As used in this subsection, the term 'relocation payments' means payments by a local public agency to individuals, families, business concerns, and nonprofit organizations for their reasonable and necessary moving expenses and any actual direct losses of property except goodwill or profit (which are incurred on and after August 7, 1956, and for which reimbursement or compensation is not otherwise made) resulting from their displacement from an urban renewal area made necessary by (i) the acquisition of real property by a local public agency or by any other public body, (ii) code enforcement activities undertaken in connection with an urban renewal project, or (iii) a program of voluntary rehabilitation of buildings or other improvements in accordance with an urban renewal plan: PROVIDED, That such payments shall not be made after completion of the project or if completion is deferred solely for the purpose of obtaining further relocation payments. Such payments shall be made subject to such rules and regulations as may be prescribed by the Administrator, and shall not exceed $200 in the case of an individual or family, or $3,000 or, if greater, the total certified actual moving expenses in the case of a business concern or nonprofit organization. Such rules and regulations may include provisions authorizing payment to individuals and families of fixed amounts (not to exceed $200 in any case) in lieu of their respective reasonable and necessary moving expenses and actual direct losses of property.
 '(3) Any contract with a local public agency which was executed under this subchapter before August 7, 1956 may be amended to provide for payments under this subsection for expenses and losses incurred on or after such date.'
 
 
 [4]
 The Title I contract, Part 1, Section 8, title 'Relocation Payments', paragraph (a) reads:
 '(a) The Government further agrees to increase the Project Capital Grant otherwise payable to the Local Public Agency pursuant to the provisions of Section 7 hereof in an amount equal to the relocation payments which are made by the Local Public Agency in connection with the Project in accordance with the rules & regulations prescribed by the Administrator with respect thereto, entitled 'Rules and Regulations Governing Relocation Payments Under Section 106(f) of the Housing Act of 1949, As Amended': Provided, That the amount of such increase shall in no event exceed the sum of Six Hundred Thirty-one Thousand Dollars ($631,000.00).'
 
 
 [5]
 '* * * The faith of the United States is solemnly pledged to the payment of all (capital) grants contracted for under this subchapter and there are authorized to be appropriated, out of any money in the Treasury not otherwise appropriated, the amounts necessary to provide for such payments.'
 
 
 [6]
 Under the 1949 Act, adequate provisions for relocation of displaced families became a necessary condition for federal assistance. Section 105(c) of Housing Act of 1949, 63 Stat. 417, 81st Cong. 1st Sess., 42 U.S.C. 1455(c) (1958). Whether this requirement was met was made a non-delegable determination of the Administrator. Act of August 2, 1954, 68 Stat. 624, 42 U.S.C. 1451(c) (1958). In 1956, the predecessor provision with which we are concerned was passed authorizing relocation payments up to specified amounts to families and businesses for reasonable and necessary moving expenses resulting from displacement by federally assisted Urban Renewal project. Act of August 7, 1956, 70 Stat. 1100, Section 305, 84th Cong. 2d Sess. In 1957 and 1959, these maximum amounts were increased. Act of July 12, 1957, Pub.L. 85-104, 71 Stat. 300, 85th Cong. 1st Sess.; Act of Sept. 23, 1959, Pub.L. 86-372, 73 Stat. 673. The 1959 amendment further broadened the instances under which relocation payments may be made, by redefining relocation payments. Act of September 23, 1959, 73 Stat. 673, Pub.L. 86-372, 42 U.S.C. 1456(f)(2) (1958), as amended. in 1961, the ceiling on maximum relocation payments authorized to businesses displaced was lifted, so that actual certified relocation expenses were reimbursable. Act of June 30, 1961, Pub.L. 87-70, Section 304, 75 Stat. 167. See also Section 305 of the Housing Act of 1964 titled 'Relocation of Displacees from Urban Renewal Areas.' Pub.L. 88-560