George MERGE and Walter C. Hooper, Adm. of the Est. of Weldon R. Hooper, Dec'd., t/d/b/a Asphalt Products Company, Appellants,

v.

Richard A. TROUSSI, Area Coordinator, Urban Renewal Adm. of the Dept. of Housing and Urban Development, Robert C. Weaver, Secy. Department of Housing and Urban Development and Urban Redevelopment Authority of Pittsburgh.

No. 16673.

United States Court of Appeals
Third Circuit.

Argued Feb. 5, 1968.

Decided May 2, 1968.

80

James E. McLaughlin, McArdle & McLaughlin, Pittsburgh, Pa., for appellants.

Howard J. Kashner, Civil Division, Appellate Section, Department of Justice, Washington, D. C., for appellee Richard A. Troussi.

Dina G. McIntyre, Glenshaw, Pa., for appellee Urban Redevelopment Authority of Pittsburgh.

Before HASTIE, Chief Judge, and FREEDMAN and VAN DUSEN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This appeal is from an order of the District Court dismissing the action below for lack of jurisdiction. On March 14, 1966, appellants Merge and Hooper sued the several appellees, seeking to recover certain "relocation" moving expenses allegedly due them under federal law. Upon motion of appellee Urban Redevelopment Authority of Pittsburgh, the action was dismissed under F.R.Civ. P. 12 on the grounds that Congress had withdrawn jurisdiction of the Federal Courts by the 1964 amendments to the Federal Housing Act. We think the District Court's dismissal was proper but the grounds for our affirmance require some elaboration.

Appellants Merge and Hooper[1] conducted a business in the City of Pittsburgh which operated from two leased, but separate, buildings, one on either side of a street. In October 1961 the Urban Redevelopment Authority of Pittsburgh (Pittsburgh Authority) condemned one of the two buildings as part of an Urban Renewal Project. The boundary of the renewal area ran along the street between the two leased buildings.

The Pittsburgh Authority had entered, on November 3, 1960, into a contract with the United States Government under which the Federal Government gave certain financial assistance to the local Pittsburgh Authority. This contract, a "Title I Loan and Grant Contract," was entered into by the appropriate federal administrative agency (now the appellee Urban Renewal Administration of the Department of Housing and Urban Development—hereinafter HUD) pursuant to the Federal Slum Clearance Act or Housing Act of 1949, as amended, 42 U.S.C. §§ 1441 et seq. Congress had provided in this statute that the Administrator of the federal agency (now appellee Secretary Weaver of HUD) could include in any Title I contract a provision permitting the local Authority to make "relocation payments" for which the Federal Government would reimburse the local Authority by an increase in the amount otherwise payable under the Title I contract. Relocation payments made pursuant to any such contract provision were to "be made subject to such rules and regulations prescribed by the [federal] Administrator."[2] 42 U.S.C. § 1456 (f) (2).

The appellants petitioned the Pittsburgh Authority for their allowable relocation expenses—"total certified actual moving expenses"—and received payment for the costs of moving from the one actually condemned building. Their request for the expenses of moving from

---

1. Appellant Walter C. Hooper is administrator of the estate of Weldon R. Hooper, a partner in the enterprise Asphalt Products Company, which is the "business concern" claiming moving expenses under the Federal Housing Act.

2. Originally (8/7/56) 42 U.S.C. § 1456(f) (2) provided that the rules and regulations governing were those in effect on the date of the execution of the Title I contract. By amendment of September 23, 1959, this subsection was amended to make all relocation payments subject to rules and regulations prescribed without reference to the date.

the second building across the street was denied by the Pittsburgh Authority. A similar request for these "second building" moving expenses in the form of part of the damages for the taking was also denied by the Board of Viewers appointed by a state court upon the appellants' petition. The third attempt to obtain the additional moving expenses was a suit in the District Court on February 20, 1963, against the predecessors of the present appellees.[3] The District Court entered summary judgment for the defendants on the theory that the plaintiffs, appellants here, lacked standing and hence had no cause of action. In a divided opinion, after argument before this court sitting en banc, we reversed the summary judgment. Merge v. Sharott, 341 F.2d 989 (3rd Cir. 1965).[4] Three opinions were written, none of which was supported by a majority of the court.[5]

A re-examination of the opinions reveals two different theories of the nature of the plaintiffs' cause of action. The plurality opinion accepted a stipulation for purposes of appeal that at trial the plaintiffs could prove the two separate buildings were a fully integrated business unit. The plurality then reasoned that a trial should be held to see if, factually, a taking had occurred of a "business concern" (which, on the record then before the court due to the stipulation, was a single unit despite one building being outside the renewal boundary) and, therefore, payment of less than all the moving expenses of the "business concern" would be an arbitrary or capricious administrative determination. The conclusion of the plurality opinion that the plaintiffs had both a cause of action and standing rests on the theory that the federal statute governing relocation payments (and the regulations promulgated thereunder) created a binding obligation of the United States, statutory in origin, and jurisdiction therefore existed under 28 U.S.C. § 1331[6] for plaintiffs to seek redress of a federally-created "right."

The dissenting opinion,[7] after analyzing the same statutory and contractual framework, reached the conclusion that the plaintiffs had no cause of action against the United States based on a federal statute. In the dissenters' view, the Title I contract between HUD and the Pittsburgh Authority at least gave the plaintiffs a cause of action against the Pittsburgh Authority, the plaintiff suing as third-party beneficiaries of a contract that included by reference or incorporation certain standards established by statute and regulation. The dissent added that such a cause of action, since not raising a "federal question," was not maintainable in the Federal Courts absent diversity of citizenship.[8]

---

3. Appellee Urban Redevelopment Authority of Pittsburgh was a defendant in the earlier suit as well, and appellee Secretary Weaver was a defendant in the earlier suit in his former capacity as Administrator of the H. H. F. A. This earlier action was docketed as C.A. No. 63–139 in the U. S. District Court for the Western District of Pennsylvania.

4. On remand, after a trial, C.A. No. 63–139 was dismissed without prejudice for failure "to timely prosecute."

5. The decision of the plurality to reverse the summary judgment and dismissal by the District Court became the decision of this court when two judges concurred on the grounds that the record was insufficient to warrant the decision below. Two judges dissented. Appellants have contended that because Merge v. Sharott,

341 F.2d at 993, n. 6, mentions the 1964 amendments to the Federal Housing Act, our prior decision is *res judicata* as to the existence of federal jurisdiction. We do not agree. The regulation implementing the statutory revision was not promulgated until during the argument in Merge v. Sharott, and there is no indication that it was ever considered. Moreover, the decision of this court, divided as it was, was not a final decision as to jurisdiction in this new suit and, hence, can raise no bar.

6. Appellants rely on 28 U.S.C. §. 1331 in the present case as well.

7. 341 F.2d at 996–998.

8. In Merge v. Sharott, supra, plaintiff-partners, Merge and Hooper, were both citizens of Pennsylvania. Apparently sometime after this prior suit was insti-

■ We do not in this appeal have to decide which theory, if either, was correct. Under either theory, the appellants' suit in the present case is outside the court's jurisdiction. Under the plurality approach in Merge v. Sharott, the cause of action is statutory, a suit to recover based on rights granted by Congress. The suit at bar, however, was brought on March 14, 1966, after Congress had made substantial amendments to the relevant statute.

In 1964, the entire section of the Housing Act covering relocation payments, 42 U.S.C. § 1456(f), was repealed, effective September 2, 1964. The new provisions, 42 U.S.C. § 1465, provided for additional relocation benefits and changed the definitions and standards governing the payments. By 42 U.S.C. § 1465(d),[9] Congress also made a specific addition to the Federal Administrator's power to promulgate regulations which would apply to any relocation payments allowable under a Title I contract. The Administrator (now the Secretary of HUD) might provide that determinations by the local Authority on such payments would be "final and conclusive for any purposes and not subject to redetermination by any court. * * *" Under this grant of authority, regulations were first issued January 13, 1965, 30 Fed.Reg. 439, 441, § 3.104(c) (1965), making documented determinations by the local public agency "final and conclusive for any purposes and not subject to redetermination by any court. * * *" The same 1964 amendments also provided (§ 310(b) of Pub.L. 88–560, 42 U.S.C.A. § 1465, historical note at 320) that any Title I contract executed before September 2, 1964, could be amended to provide for the payments authorized by the new relocation payments section, 42 U.S.C. § 1465.

The record on this appeal contains a stipulation by the parties of the Title I contract between HUD and the Pittsburgh Authority entered into November 3, 1960, and, in addition, of the "Fourth Amendatory Contract" thereto signed February 25, 1965. This stipulation shows that § 8 of the original Title I contract (see 341 F.2d at 992, n. 4), which originally read, *inter alia,*

" * * * payments which are made by the Local Public Agency * * * in accordance with the * * * 'Rules and Regulations Governing Relocation Payments under *Section 106(f)* of the Housing Act of 1949, As Amended' * * * "[10]

was amended by § 4(a) of the Fourth Amendatory Contract by deleting the emphasized language so that the language beginning " 'Rules * * *' " reads, *inter alia,*

" * * * 'Rules and Regulations Governing Relocation Payments under the Housing Act of 1949, As Amended'. * * * "

The appellants' claim, therefore, is governed by the Federal Housing Act as presently amended. Their right to recovery, if any, arises because the denial of their certified moving expenses is discretionary action which so deviates from the federal statutory (and regulations) standards that the administrative determination by the Pittsburgh Authority is arbitrary and capricious. But under the statute and regulations as now amended, such administrative determinations are declared "final and conclusive for any purpose and not subject to redetermination by any court."

■ Viewing this suit thus, as based on a "right" created by federal statute, we agree fully with the District Court that under Bruner v. United States, 343 U.S. 112, 72 S.Ct. 581, 96 L.Ed. 786 (1962); Smallwood v. Gallardo, 275 U.S. 56, 48 S.Ct. 23, 72 L.Ed. 152 (1927); and Hallowell v. Commons, 239 U.S. 506, 36 S.Ct. 202, 60 L.Ed. 409 (1916), the

tuted, Hooper died. The present suit is joined by his administrator. See footnote 12, infra, and footnote 1, supra.

9. This subsection was redesignated [42 U.S.C. § 1465] "(e)" by amendments of August 10, 1965.

10. See footnote 2, supra.

court loses all jurisdiction, even in a case already pending, when Congress amends the governing statute by taking jurisdiction from the courts. Despite appellants' argument to the contrary, we find nothing in the statutory scheme or implementing regulations that shows an intent to withdraw such jurisdiction only for determinations made since a certain date. While it is true that certain relocation benefits were explicitly made retroactive to January 27, 1964, it is not even logical to conclude further that withdrawal of court jurisdiction also is "retroactive" only to January 1964. On the contrary, the statute begins with reference to displacements and moving expenses incurred on and after August 7, 1956, and concludes by authorizing regulations, including the withdrawal of court jurisdiction, to carry out "the provisions of this section." "This section" appears to us plainly to refer to the entire section, 42 U.S.C. § 1465, which replaced totally the former relocation payment subsection, 42 U.S.C. § 1456(f). Hence, the conclusion of the District Court that the court lacked jurisdiction to review the Pitts-

burgh Authority's determination is correct.

Under the second theory of the appellants' cause of action, it may be true that as third-party beneficiaries of a Title I contract they have a claim for damages or performance that arose in 1961. When the Pittsburgh Authority declined to award the additional moving expenses, it perhaps created a cause of action for breach of the Title I contract, as then drafted and including by reference the statutory standards then applicable.[11] Under this theory of the case, it might be true that the amended statute and new regulation making local determinations final and conclusive for any purposes would not apply to this particular suit. But we do not need to decide or comment on this problem arising under a contract theory of this controversy because the appellants' suit against the Pittsburgh Authority lacks the requisite diversity jurisdiction.[12]

For the above reasons, the order of the District Court dated April 28, 1967, as amended by order of May 5, 1967, was correct and will be affirmed.

11. It should be noted that paragraph 7 of the present complaint:
 "Prior to October of 1961, the Asphalt Products Company conducted its business of manufacturing asphalt products in Buildings No. 1 and No. 2, said building [sic] were used in an integrated manufacturing process."
 differs from paragraph 3 of the stipulation filed for purposes of the appeal in Merge v. Sharott, supra, 341 F.2d at 990, n. 1:
 "For purposes of this appeal before the Third Circuit the appellants' business operation was fully integrated having a unity of use between both buildings."
 Since this stipulation was clearly for purposes of appeal only (the stipulation on this appeal has no similar paragraph), the decision in Merge v. Sharott, supra, cannot be res judicata of any issue decided on the basis of the stipulation.

12. The deceased partner, Weldon R. Hooper, is not a plaintiff in this case and has been replaced by his administrator, Walter C. Hooper, a citizen of California. The partners, however, do not appear on the present record (consisting entirely of pleadings, motions and orders) to have severable interests in the cause of action and, rather, recovery under any theory of their cause would lie only if a unified "business concern," Asphalt Products Company, was seeking its certified moving expenses. Accordingly, the well-recognized requirement of complete diversity denies federal jurisdiction since plaintiff appellant Merge is a citizen of Pennsylvania. Strawbridge v. Curtiss, 3 Cranch [7 U.S.] 267, 2 L.Ed. 435 (1806); cf. 1 Moore's Federal Practice ¶ 0.60 [8.-4] (1959).